BOLIN, Judge.
While employed by International Paper Company, Robert E. O’Dell was injured during the course and scope of his employment, for which he was and is being paid benefits due him under the Louisiana Workmen’s Compensation Statute. This suit was instituted to compel defendant to pay plaintiff an additional sum of $19.00 weekly during the period of his disability which plaintiff contends is due him under an agreement between defendant and plaintiff’s union. Defendant filed an exception of prematurity asserting plaintiff had not exhausted the arbitration remedies provided by the labor agreement. For written reasons the exception of prematurity was overruled by the lower court and the case went to trial on the merits. After trial a judgment was rendered in favor of O’Dell ordering defendant to pay him the additional $19.00 per week during the period of his disability. Defendant appeals on the merits and specifically urges that plaintiff’s exclusive remedy is the grievance procedure established in the labor agreement. For reasons hereinafter stated, we hold this is plaintiff’s exclusive remedy and reject his demands.
Defendant admitted plaintiff was totally and permanently disabled because of an injury sustained while employed by defendant on May 13, 1964. Defendant immediately began paying plaintiff $35.00 per week, the maximum amount due under the compensation statute at that time. International also admits paying plaintiff the supplemental sum of $19.00 per week from the date of the accident until April 10, 1965.
The evidence disclosed that during the 1954 negotiations between defendant and plaintiff’s union, defendant agreed to supplement the workmen’s compensation payments made to employees under certain circumstances. Defendant had obtained a group insurance plan for sickness and nonoccupational accidents which paid benefits greater than the maximum due under workmen’s compensation to an employee unable to work because of some disability connected with his employment. The minutes of the negotiations conducted July 13-14, 1954, show that the third and fourth proposals submitted by the union provided for an increase in the maximum benefits under the sickness and non-occupational accident insurance plan and for the defendant to pay the difference between workmen’s compensation and the amount paid under the group insurance plan. The negotiators for defendant agreed:
“4. In those states where the Work-mens Compensation for occupational injury results in payments of less than [the amount paid under the group insurance plan] the company will pay the difference between [the amount paid under the group insurance plan] and the weekly Workmens Compensation due. . . ”
The benefits under the group insurance plan were increased until, at the time of his injury in 1964, plaintiff would have been entitled to a payment of $54.00 per week had he been unable to work because of sickness or non-occupational injury. This is the basis of the supplemental payment of $19.00 weekly. i
We shall first consider whether the lower court was correct in ruling that arbitration was not plaintiff’s exclusive remedy.
Plaintiff did not commence this action until October 6, 1967. At that time defend *103 ant urged that the suit was premature because plaintiff had not exhausted all of his remedies under the labor contract. The record discloses that after defendant filed the exception of prematurity plaintiff’s union filed a complaint form alleging plaintiff was being unfairly treated in this matter. It is clear plaintiff’s union did not take the complaint to arbitration. Defendant contended in an amended answer that under the labor agreement the complaint is considered settled since the grievance procedure was not pursued to arbitration within the time allowed.
The record includes two labor agreements entered into by defendant and plaintiff’s union. One is for the contract year 1954-55 and was obviously reached as a result of the July 1954 negotiations. The second is for the contract years 1963-65 and was in effect at the time plaintiff was injured and at the time defendant terminated the supplemental payments.
The pertinent portion of each labor agreement, Section VII, “Adjustment of Complaints”, provides:
“Complaints arising in any department of a plant covered by this Agreement shall be handled in the following manner:
A detailed procedure for the handling of grievances is outlined, culminating in the submission of the complaint to an Arbitrator whose decision is final and binding.
Section VII provides in part as follows :
“F. If the General Manager or his representative, and the International Representative of the Union, are unable to reach a satisfactory settlement of the complaint within ten (10) days, it shall be referred to an impartial Arbitrator to be selected from a panel submitted to the Parties by the Federal Mediation and Conciliation Service. After the Arbitrator has been chosen by the foregoing procedure, he shall hear evidence of both sides and render a decision within thirty (30) days. Such decision shall be final and binding upon the Parties to this Agreement.
“I. A complaint shall be considered settled if it is not carried forward to the next step within ten (10) days. Time limits may be extended by mutual consent.”
Louisiana Revised Statutes 9:4201 provides for the validity of arbitration agreements. Wright v. Round the Corner Restaurants of Louisiana, Inc., et al., 252 So.2d 341, 346 (La.App. 4th Cir. 1971) recognized that arbitration is favored as a public policy in Louisiana. However, the legislature of this state has recognized the preemption of the field of labor-management relations by the Congress of the United States, and Louisiana Revised Statutes 9:4216 specifically excludes contracts of employment of labor or contracts for arbitration which are controlled by valid legislation of the United States.
The Supreme Court of the United States, in interpreting appropriate federal legislation, has expressed an equally strong national policy favoring arbitration of labor-management disputes. The federal policy is to promote industrial stabilization through collective bargaining agreements, and a major factor in achieving industrial peace is a provision for arbitration of grievances. United Steelworkers of America v. Warrior and Gulf Navigation Company, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Consistent with this policy, the judicial function is confined to a determination of whether the parties have agreed to arbitrate a specific complaint. In United Steelworkers of America, at 80 S.Ct. 1353, it was held:
“ . . . An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage’’ (Emphasis supplied)
*104 The Court also emphasized that all matters not specifically excluded from arbitration come within the scope of the grievance and arbitration provisions of the labor agreement. Given this strong pronouncement of the national policy, the complaint in the instant case should have been handled in accordance with the grievance procedure established in the labor agreement unless it was excluded for some reason.
Plaintiff contends that the agreement under which defendant made the supplemental payments is not a part of the labor agreement itself and should not be subject to the grievance procedures of the labor agreement. The agreement did, however, result from proposals made by plaintiff’s union during negotiations with defendant in 1954. These negotiations led to the labor agreement which established the grievance procedures, and any advantages to plaintiff came from these negotiations.
Considering the statements of the United States Supreme Court that doubts should be resolved in favor of coverage, we conclude the language in Section VII is so broad as to include complaints which arise over matters not directly mentioned in the labor agreement itself.
Section VIII, Subsection B, of the labor agreements provides that:
"The matter of wages is not to be a subject of arbitration.”
Plaintiff asserts the issue of supplemental payment is a matter of wages and therefore not subject to arbitration. In reaching the judgment below the trial court followed this argument. The trial court was in error in its conclusion.
In Desert Coca Cola Bottling Company et al. v. General Sales Drivers, Delivery Drivers and Helpers Local 14, 335 F.2d 198 (U.S.Ct. of App. 9th Cir. 1964), the Court was faced with the question of whether certain employees were entitled to overtime compensation. The labor agreement provided, “It is understood that [the grievance procedures] shall not apply in any way concerning wages.” The Circuit Court of Appeals reversed a district court ruling and gave a narrow definition to the term “wages”, equating it to the term “wage scale”. The same narrow definition of “wages” should be applied in this case. The matter of supplemental pay to a totally and permanently disabled employee has nothing to do with wage scale, and this complaint is not excluded from arbitration by Section VIII, Subsection B, of the labor agreement.
Plaintiff also contends that he should not be denied his day in court because his union failed to follow through on the grievance procedure. In Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967), the Court held that an aggrieved employee may bring an action against his employer in the face of a defense that he has failed to exhaust contractual remedies, provided the employee can prove his union, as his bargaining agent, breached its duty of fair representation in processing the grievance. Suffice it to say that in the instant case plaintiff has presented absolutely no evidence to support a finding that the union breached its duty to him, and this court will not presume such a breach.
The national policy favoring a finding of arbitrability of complaints and the narrow meaning given to a clause excluding “wages” from arbitration leads us to the conclusion the complaint in the instant case should have been handled in accordance with the grievance procedures outlined in the labor agreement. We find plaintiff has failed to follow the grievance procedures established by the labor agreement.
In Republic Steel Corporation v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), it was held an employee is precluded from bringing suit against his employer on a complaint if the employee has failed to utilize the grievance procedures provided by the collective bargaining agreement.
*105 The clear meaning of Section VII, Subsection I, is that a complaint is considered settled if not taken to the next step within the allowed delay. Since this was not done by plaintiff, his complaint must now be considered settled. Having decided the case on this point, it is unnecessary to discuss the other issues.urged by appellant.
For the foregoing reasons the judgment in favor of plaintiff is reversed, annulled and set aside, and it is now ordered that plaintiff’s demands are rejected at his cost.