331 So.2d 474 (1976)
BECKER AND ASSOCIATES, INC.
v.
LOU-ARK EQUIPMENT RENTALS CO., INC.
LOU-ARK EQUIPMENT RENTALS CO., INC.
v.
BECKER AND ASSOCIATES, INC.
No. 56623.
Supreme Court of Louisiana.
February 23, 1976.
Dissenting Opinion May 14, 1976.
Rehearing Denied March 26, 1976.
*475 Nathan Greenberg, Greenberg & Dallam, Gretna, for applicant Lou-Ark.
Eugene R. Preaus, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, for respondent Becker & Associates.
DENNIS, Justice.
These consolidated cases present a suit by a lessee of heavy equipment against its lessor for the specific performance of an option to purchase the equipment and a suit by the lessor to recover the movable property and accrued rental from the lessee.
Lou-Ark Equipment Rentals Co., Inc., applicant herein, by a written agreement dated July 13, 1971, leased to respondent, Becker and Associates, Inc., a 45 ton crawler crane at a rental of $2,000.00 per 30 calendar days plus sales tax, for a minimum lease period of 30 days. On the same date the parties executed and made part of the lease a written agreement granting Becker the option to purchase the equipment, which provided that 99% of the rental paid for the crane would apply toward the purchase price and that the value of the equipment would be determined "by an independent appraiser or by mutual agreement."
Becker paid Lou-Ark rental in accordance with the terms of the lease from July, 1971 through February, 1973, totaling $41,200.00 including taxes. In January and February, 1973, Becker informed Lou-Ark of its desire to exercise the option. At the request of Becker the value of the crane was estimated by two different appraisers, both of whom determined it was worth $40,000.00. It is disputed whether Lou-Ark agreed to the designation of either appraiser as an "independent appraiser" for purposes of determining the value of the property under the option. When Becker called upon Lou-Ark to sell the crane for the price of $40,000.00, Lou-Ark refused.
Becker filed suit against Lou-Ark for a declaratory judgment of ownership and alternatively for specific performance. It deposited $412 including taxes into the registry of the court as the balance between the appraisal value of the equipment and 99% of the amount it had paid Lou-Ark as rent. Lou-Ark brought suit against Becker seeking to be declared owner of the crane, for its return and for $12,000.00 accrued rent, as well as future rent, interest and attorney's fees.
The two suits were consolidated for trial; the district court rendered judgment *476 for Lou-Ark, and Becker appealed. The court of appeal reversed, set aside the lower court decrees and rendered judgment for Becker ordering specific performance of the option to purchase. 314 So.2d 553 (La.App. 4th Cir. 1975). Upon application of Lou-Ark, we granted writs. 318 So.2d 55 (La.1975).
Lou-Ark contends that the option agreement was null and void because it was without a fixed or definite term as required by Article 2462 of the La. Civil Code, which, in pertinent part, provides:
"* * *
"One may purchase the right, or option to accept or reject, within a stipulated time, an offer or promise to sell, after the purchase of such option, for any consideration therein stipulated, such offer, or promise can not be withdrawn before the time agreed upon; and should it be accepted within the time stipulated, the contract or agreement to sell, evidenced by such promise and acceptance, may be specifically enforced by either party."
In enforcing this provision we have held that perpetual options which would take property out of commerce are prohibited because they violate the doctrine of ownership established by the La. Civil Code. Bristo v. Christine Oil and Gas Co., 139 La. 312, 71 So. 521 (1916); see also Delcambre v. Dubois, 263 So.2d 96 (La.App. 3rd Cir. 1972); Clark v. Dixon, 254 So.2d 482 (La.App. 3rd Cir. 1971).
The option agreement itself sets forth no time limit within which the offer to sell the property must be accepted. Nevertheless, the court of appeal held that the option stated a time within which it was to be exercised, because, being part of the same agreement as the lease, Becker could elect to exercise its right of option to purchase the leased property at any time during a thirty-day rental period for which the rent had been paid.
Had the lease contract provided a definite term we would agree with the decision below, because the failure to expressly state a termination date in an option agreement made part of a lease having a definite term does not render the option invalid if the time for its acceptance is necessarily limited by the term of the lease. Kinberger v. Drouet, 149 La. 986, 90 So. 367 (1922); Smith Enterprises Inc. v. Borne, 245 So.2d 9 (La.App. 1st Cir. 1971). However, upon careful inspection, we find that the lease between Becker and Lou-Ark was not for a definite term but was dependent upon the will of the parties for its duration.
The lease instrument provided for a "rental rate" of $2,000.00 plus tax "per 30 calendar days." The "rental period" was described as beginning on July 13, 1971, and ending when the equipment "is received by the Owner at their warehouse. . . or . . . on the date Bill of Lading is issued covering the return of the Equipment to the Owner. Additionally, a "termination of agreement" clause provided that the lessor shall have the right to take possession of the equipment five days after the lessee's default on any payment. Therefore, the parties agreed to methods by which the lease could be terminated, but they did not agree upon a definite term for the lease.
Because no time for the duration of the lease was agreed on by the parties, it was subject to termination in accordance with La.C.C. art. 2686, which provides:
"The parties must abide by the agreement as fixed at the time of the lease. If no time for its duration has been agreed on, the party desiring to put an end to it must give notice in writing to the other, at least ten days before the expiration of the month, which has begun to run."
Thus, in addition to the methods provided by the lease contract, the lease could be terminated by either party by the giving of notice in writing to the other, at least *477 ten days before the expiration of the month.
The court of appeal apparently concluded that by operation of law a new 30-day lease was confected each month. Thus, the court reasoned that the option to purchase terminated upon the expiration of each 30-day rental period and was effectively limited thereby. We find, however, that the premise of the court of appeal decision was erroneous and at variance with the jurisprudence concerning month to month leases.
Under La.C.C. art. 2686, the presumed continuance of a lease by operation of law from month to month, resulting from holding over without notice, is called a "tacit reconduction." The effect of such a continuance is not to constitute a new lease each month or even to renew the old one, but rather to continue the original lease. Weaks Supply Co. v. Werdin, 147 So. 838 (La.App. 2d Cir. 1933). Cf. Governor Claiborne Apartments, Inc. v. Attaldo, 256 La. 218, 235 So.2d 574 (1970). Accordingly, the month to month lease in the instant case did not terminate each month but endured continuously until put to an end in the manner provided by La.C.C. art. 2686 or by the lease contract.
Since there were no provisions in either the lease or the option itself limiting its duration, the option was null and void for failure to stipulate a time period for the acceptance of the promise to sell. La.C.C. art. 2462.
Accordingly, the judgment of the court of appeal must be set aside. However, we cannot fully reinstate the trial court's judgment because its conclusion that Lou-Ark is entitled to enforcement of the lease contract, including an award of attorney's fees, was also erroneous. It is well settled under our Civil Code and the jurisprudence interpreting it that when one of the parties errs in perceiving the very nature of the contract into which he enters, the contract cannot be enforced against him. La.C.C. art. 1841 states:
"Error as to the nature of the contract will render it void.
"The nature of the contract is that which characterizes the obligation which it creates. Thus, if the party receives property, and from error or ambiguity in the words accompanying the delivery, believes that he has purchased, while he who delivers intends only to pledge, there is not [no] contract."
See also Baker v. Baker, 209 La. 1041, 26 So.2d 132 (1946); Green v. McDade, 17 So.2d 637 (La.App. 2nd Cir. 1944). In both cases, the courts refused to enforce a purported contract of sale against an owner of property who intended only to offer it as security.
As stated at Pothier, 1 Obligations, Part 1, Art. III, § 1, n. 17, the source of our present Civil Code art. 1841:
"Error is the greatest defect that can occur in a contract, for agreements can only be formed by the consent of the parties, and there can be no consent when the parties are in an error respecting the object of their agreement. * * *
"There if a person intends to sell me anything, and I intend to receive it by way of loan or gift, there is neither sale, no loan, nor gift. If a person intends to sell me a thing, and I intend to buy or receive a donation of another, there is neither sale nor donation."
In the instant case, Becker's officers mistakenly believed that it was entering into a rental agreement with an option to purchase. In fact, the option was null for lack of a specified time within which to accept the offer of sale. We are convinced from the evidence that Becker would not have entered the transaction if its officers had been aware that the contract consisted of a mere lease of the equipment. Thus, Becker erred as to the nature of the contract, and the lease agreement should not be enforced against it.
However, the principle of unjust enrichment, embodied in our Civil Code *478 art. 1965 requires that Lou-Ark be compensated in the amount of the fair rental value of the equipment for the period it was in Becker's possession. Accordingly, it is necessary that we remand the case to the trial court to determine precisely this value.
The court of appeal judgment is set aside and the case is remanded to the trial court for further proceedings consistent with the views expressed herein.
Reversed and remanded.
SANDERS, C. J., concurs in the result only.
SUMMERS, J., dissents and assigns reasons.
SUMMERS, Justice (dissenting).
I dissent for the reasons assigned by the Court of Appeal. See 314 So.2d 553.