STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

09-256

JAMES SHAY

VERSUS

CREATIVE POOLSCAPES AND GARDENS, LLC

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2007-4992
HONORABLE R. RICHARD BRYANT, JR., DISTRICT JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy and Shannon J. Gremillion, Judges.

AFFIRMED.

Thibodeaux, Chief Judge, dissents and assigns written reasons.

Charles Schrumpf
Law Offices of Oliver and Charles Schrumpf, APLC
3801 Maplewood Drive
Sulphur, LA   70663
(337) 625-9077
COUNSEL FOR DEFENDANT/APPELLEE:
    Creative Poolscapes and Gardens, LLC

Claude P. Devall
Devall Law Firm
1111 Ryan Street
Lake Charles, LA   70601
(337) 433-2053
COUNSEL FOR PLAINTIFF/APPELLANT:
    James Shay

AMY, Judge.

The plaintiff sued his former employer for unpaid wages. The employer answered the suit with a reconventional demand requesting money allegedly owed for the purchase of a truck and other damages. The trial court dismissed both claims. The plaintiff appealed and the defendant answered the appeal. For the following reasons, we affirm.

## Factual and Procedural Background

James Shay, the plaintiff and appellee, was employed by Creative Poolscapes and Gardens, LLC (Creative), the defendant and appellant. The plaintiff was hired at a rate of $10 per hour of work for a 40 hour work week. The parties agreed that the plaintiff would be paid $100 dollars in cash at the end of the week, with the remaining $300 dollars owed placed in savings by the defendant to be used at the plaintiff's direction. As admitted by both parties, the arrangement was created in order to allow the plaintiff to continue receiving disability benefits.

Shortly after the plaintiff began employment, the defendant purchased a used Ford truck. The defendant asserts that the truck was actually purchased by the plaintiff, from the money he was saving; however, the defendant maintained title to the truck. The defendant also asserts that insurance and gas for this truck was paid from the plaintiff's savings. The plaintiff used the company credit card to purchase gas, and denies any agreement that insurance and gas were to be paid out of his savings. The used Ford truck was sold to a third party. The defendant asserts that the plaintiff was given a credit in his savings for the purchase price of the truck.

The defendant again purchased another truck, a new Dodge. The truck, whose purchase price was nearly $50,000 dollars, was financed by agreement with the defendant and the dealership to pay a monthly note of $818.49 for five years. The

defendant asserts that these monthly payments were to be paid out of the plaintiff's savings. The plaintiff contends that this truck was purchased by the defendant for use in the defendant's business, although the plaintiff maintained sole possession of the truck. The record evidences that the parties had a discussion about what would happen with the truck at the end of the five-year financing period; however, their accounts of that discussion differ. The plaintiff alleges that he agreed with the defendant that at the end of five years, he would have the option to purchase the truck. The defendant, on the other hand, claims that the plaintiff always owned the truck, and that the defendant agreed to transfer the title to him if he was still employed by the defendant at the end of five years. The record also reveals that after the purchase of this second truck, there was not an understanding about which party was responsible for this truck's insurance and gas payments.

The plaintiff's employment with the defendant ended on October 27, 2006. The parties dispute how long the plaintiff maintained possession of the truck after ending his employment. It is not disputed that at the time of the present suit the defendant had possession of the truck.

The plaintiff filed suit on September 10, 2007, for unpaid wages. The plaintiff claimed that the defendant refused to pay him the wages accumulated in savings for his benefit, specifically, the accumulation of $300 dollars saved from his period of employment between January 2, 2006 and October 26, 2006. The defendant responded to the plaintiff's suit with an answer and reconventional demand. The defendant denied it owed the plaintiff any unpaid wages, and instead, demanded the plaintiff pay the purchase price of the truck or damages to the truck and diminution in its value.

2

After a bench trial, the trial court found that an employment relationship existed between the parties, in addition to finding, "that some type of agreement" existed between the parties as to "obtaining the vehicle in the future, the terms of which were not clear." Accordingly, the trial court dismissed both of the parties claims, stating:

> Although the defendant failed to meet its burden of proof that a current purchase agreement exists between the parties, the court finds that some type of agreement between the parties did exist and that the defendant was reasonable in withholding plaintiff's wages. For this reason, the court finds that no wages are owed to the plaintiff. In lieu of wages owed, the court believes that the plaintiff is entitled to a share of the proceeds received from any future sale of the vehicle proportionate to his wages used in payment of the vehicle.
>
> Furthermore, the Court dismissed the Defendant's reconventional demand for payment of expenses associated with the vehicle. The defendant failed to meet its burden of proof that such funds were owed by the employee[.]

The plaintiff now appeals, again seeking unpaid wages, penalties, and attorney fees. The defendant answered the appeal, seeking reimbursement of payment on the truck and attorney fees. However, the defendant's brief did not assign any errors and pursuant to the Uniform Rules–Courts of Appeal, Rule 2-12.4, the defendant has abandoned issues regarding its reconventional demand denied by the trial court.

**Discussion**

The plaintiff asserts that the trial court erred in finding that he failed to prove a right to unpaid wages, penalties, and attorney fees. Specifically, the plaintiff argues that the trial court committed legal error in finding that unpaid wages existed and in finding that he was not entitled to those wages. He argues further that because he made a well-founded claim for wages that he is entitled to penalty wages. The

3

plaintiff also argues he is entitled penalties because the defendant was in bad faith when it withheld wages. We find no merit in this assertion.

The parties in this case intentionally created this unusual employment relationship in order to maintain the plaintiff's disability status. Only after this arrangement failed did the parties turn to the law seeking assistance and expecting that they would be able to establish their respective burdens of proof. In the end, the trial court correctly determined that neither was due additional recovery.

Louisiana Revised Statutes 23:631 and 23:632 require that an employer pay an employee wages "due under the terms of employment[.]" The trial court's ruling demonstrates that the plaintiff simply failed to demonstrate what the terms of the oral contract were relating to the expenses associated with the purchase and maintenance of the truck. Similarly, the defendant failed to prove that it was owed additional reimbursement related to the expenses of the truck. In the end, the parties' conflicting evidence puts into question whether there was a meeting of the minds and deserves the equitable remedy arrived at by the trial court, i.e., neither party should prevail on its respective claim.

We affirm the trial court's judgment.

## DECREE

For the foregoing reasons, we affirm the judgment of the trial court. The costs of this appeal are assessed to the appellant, James Shay.

**AFFIRMED.**

4

JAMES SHAY

VERSUS

CREATIVE POOLSCAPES AND GARDENS, LLC

**THIBODEAUX, Chief Judge, dissenting.**

The "equitable" remedy structured by the trial court and sanctioned by the majority is erroneous. Equity is invoked "[w]hen no rule for a particular situation can be derived from legislation or custom." La.Civ.Code art. 4. Here, even the majority concedes that "the parties' conflicting evidence puts into question whether there was a meeting of the minds." If we are to accept this premise, then equity is inappropriate. Positive, written law governs a lack of bilateral consent. What happened in this case is exactly that: the parties never formed a contract.

Our decision today lends judicial imprimatur to a judgment and the trial court's reasons for judgment that are incomprehensible.

The trial court found that an employment relationship existed between Shay and Creative whereby Shay received $100 per week out of his $400 per week wages. The trial judge stated that "some type of agreement did exist between the employee and employer as to the employee obtaining the vehicle in the future, the terms of which were not clear." The trial court also found that Creative did not prove that there was a sale of the Dodge to Shay, but because there was some type of an agreement involving the Dodge, Creative was reasonable in withholding Shay's wages. Although the trial judge stated that "no wages are owed to the plaintiff," the

court decided that Shay was entitled to a share of the proceeds received from any future sale of the Dodge "[i]n lieu of wages owed."

After the trial, the court stated that a written agreement must exist for one to have a proprietary interest in a thing, and in this dispute there was no writing. The court went on to state that Shay was entitled to his salary in the amount of $300 per week for 41 weeks that was collected for the purchase of the vehicle. Yet, the court concluded that Shay's entitlement to this money was "for another court at another time."

In an effort to fashion an equitable solution to this dispute, the trial court committed several legal errors that tainted the trial court's findings of fact. First, no written contract is required for one to acquire an ownership interest in a motor vehicle. *Biggs v. Prewitt*, 95-315 (La.App. 1 Cir. 10/6/95), 669 So.2d 441, *writ denied,* 96-1035 (La. 5/31/96), 674 So.2d 264. Assertions of the trial court to the contrary are erroneous as a matter of law. Second, the trial court's judgment is internally inconsistent and confusing. For example, the court stated that no wages were owed to Shay; yet, at the same time, it stated that "in lieu of *wages owed*," Shay was entitled to a share of the proceeds from any future sale of the Dodge. (Emphasis added). Moreover, an entitlement to a share of the proceeds from a future sale of the Dodge implies an ownership interest the trial court held Shay did not have because of an absence of a written instrument. Finally, the trial court's pronouncement that Shay was entitled to his salary of $300 per week for 41 weeks, but this matter was for another court at another time is puzzling. How could this matter be for another court at another time if Shay filed this suit to get precisely that, $300 per week for 41 weeks?

2

All of these circumstances leads me to conclude that the trial court committed several legal errors that tainted its findings of fact. Moreover, the trial court's judgment is internally inconsistent, warranting a de novo review.

**Did the Parties Form a Contract Regarding the Employee's Wages and the Employer's Vehicle**

To form an enforceable contract, there must be consent of the parties. La.Civ.Code art. 1927. "Consent may be vitiated by error, fraud, or duress." La.Civ.Code art. 1948. Thus, an error as to the nature of the contract makes the contract void. *See* La.Civ.Code art. 1950; *Becker & Assocs., Inc. v. Lou-Ark Equip. Rentals Co., Inc.*, 331 So.2d 474 (La.1976).

> "Error is the greatest defect that can occur in a contract, for agreements can only be formed by the consent of the parties, and there can be no consent when the parties are in an error respecting the object of their agreement.
>
> * * * *
>
> "There if a person intends to sell me anything, and I intend to receive it by way of loan or gift, there is neither sale, no [sic] loan, nor gift. If a person intends to sell me a thing, and I intend to buy or receive a donation of another, there is neither sale nor donation."

*Becker & Assocs., Inc.*, 331 So.2d at 477 (quoting POTHIER, 1 OBLIGATIONS, pt. 1, art. III, § 1, n.17).

A court does not stop its inquiry once it rules that a contract never formed because of an error as to its nature. Instead, the court must decide whether one of the parties was unjustly enriched. *Becker & Assocs., Inc*, 331 So.2d 474. For example, where one party mistakenly believed that it was entering into a rental agreement with an option to purchase some equipment, and the other understood the transaction to be a mere lease, the court held the contract void. *Id.* Nonetheless, the court held that "the principle of unjust enrichment embodied in our Civil Code art.

3

1965 [presently, La.Civ.Code art. 1878] requires" that the lessor "be compensated in the amount of the fair rental value of the equipment for the period it was in" lessee's possession. *Becker & Assocs., Inc*, 331 So.2d at 477-78.

Throughout this litigation, Creative, through its witnesses, attempted to prove that the Dodge belonged to Shay. I presume, therefore, that Creative intended a *sale* of the Dodge to Shay. On the other hand, it appears from Shay's testimony that he believed the transaction involved either a sort of lease arrangement or that he simply was allowed to use the vehicle and had an option to buy it after five years, subject to the condition of his continued employment at Creative.

The objective evidence of the parties' intent, i.e., their actions, is similarly not helpful in resolving the question as to whether there was a meeting of the minds with respect to the nature of the transaction, i.e., whether it was a sale, a lease, or a rent-to-own-type of an arrangement. For example, although Creative asserted that the Dodge belonged to Shay, Creative acted as an owner of the vehicle while it was in Shay's possession. Apart from retaining the title to the truck, Creative installed its large business signs on the Dodge, it depreciated the vehicle on its books, covered the truck under its own insurance policy, and insisted on the use of the vehicle in its business.

Shay's actions are equally ambiguous. For example, although he claims that this was a company vehicle and he used it extensively in Creative's business, he also had possession of it twenty four hours a day and, in fact, used it in his personal affairs. He was present at the dealership at the time Creative bought the vehicle and actively participated in the vehicle selection process. He also had a satellite radio and installed running boards, mud flaps, and a hitch on the vehicle (though he asserts that these were for the benefit of Creative).

4

While it is tempting to conclude, based on the actions of the parties, that there was a sort of lease agreement subject to Shay's continued employment at Creative, whereby Shay would pay $300 per week in exchange for the use of the vehicle, with Creative paying for the insurance and other expenses, there are several problems. First, Stutes claimed that this money, i.e., $300 per week, included the note on the Dodge, the cost of insurance, the money she lent to Shay for gas, and other expenses Shay requested her to pay.[1] Creative's brief states that "Shay agreed with Stutes to withhold sums, which she did, and pay items he wanted paid." Nowhere in its brief does Creative claim that it would collect $300 per week in lease installments. I also note that it would be truly unusual for an employee to agree to pay this much money for a vehicle's lease and also agree to use this vehicle quite extensively in the business of another without any reimbursement.

Second, there was an arrangement with the old Ford truck. Yet, at that time Creative also collected $300 per week, making even more dubious the conclusion that there was a lease at $300 per week for the Dodge. Creative claims that this payment included the insurance cost and repayment of the principal on this Ford. Yet, how the payment of $300 per week was divided between the principal and the insurance is unknown. Thus, there is no way to determine how many installments of $300 per week would Shay have had to make before he acquired ownership of the Ford. Therefore, even if I were inclined to find that there was a meeting of the minds and some type of a contract was, in fact, formed, for the reasons stated above, it would be impossible to determine what were the terms of that agreement.

Based on the considerations above, I conclude that there was an error as to the nature of the contract and that error vitiated consent. Because there was no

---

[1] Creative's claim of entitlement to the gas and the insurance payments are rather dubious because the gas and the insurance was for Creative's benefit as the vehicle was used in its business.

contract, Creative owes Shay wages of $300 per week for 41 weeks minus a loan Creative repaid to Colleen Foreman on Shay's behalf in the amount of $240. Creative is not entitled to any money for insurance or gas because these were expenses that benefitted its business in the first place and because Creative failed to submit any evidence of these expenses. I would remand this case to the trial court for the limited purpose of ascertaining the fair use value of the Dodge while it was in Shay's possession. The trial court would then have to determine what percentage of time Shay used the truck in Creative's business. Creative is entitled to that percentage of the fair use value that the truck was not used for the benefit of Creative.[2]

## Attorney Fees

An award of reasonable attorney fees is mandatory if the employee files a "well-founded" claim for unpaid wages. La.R.S. 23:632[3]; *Carriere v. Pee Wee's Equip. Co.*, 364 So.2d 555 (La.1978). No equitable defenses "based upon a good faith dispute by the employer, arising from reasonable and non-arbitrary belief, that he did not owe the wages" are permitted. *Id.* at 556. If an employee brings a successful suit and recovers unpaid wages, the claim is a well-founded one. *Winkle v. Advance Prods. & Sys., Inc.*, 98-694 (La.App. 3 Cir. 10/28/98), 721 So.2d 983.

---

[2]For example, if the trial court determines that Shay used the Dodge for the benefit of Creative sixty percent of the time, then Creative would be entitled to forty percent of the fair use value of the Dodge while it was in Shay's possession. These numbers are for clarification purposes only and should not be used by the trial court as any guideline for its determination.

[3]That statute reads as follows:

> Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.

Thus, because Shay brought a well-founded claim for unpaid wages, he is entitled to a fee.

**Penalty Wages**

Penalty wages will be assessed against the employer if the employee shows that: "(1) wages were due and owing; (2) demand for payment thereof was made where the employee was customarily paid; and, (3) the employer did not pay upon demand." *Herbert v. Ins. Ctr., Inc.*, 97-298 p. 9 (La.App. 3 Cir. 1/7/98), 706 So.2d 1007, 1013, *writ denied,* 98-353 (La. 3/27/98), 716 So.2d 888. Yet, unlike a claim for attorney fees, a claim for penalty wages is subject to equitable defenses. *Id.* This is because the portion of La.R.S. 23:632 that authorizes penalty wages is considered penal in nature, and, therefore, must be strictly construed. *Herbert,* 706 So.2d 1007. Thus, if there is a bona fide dispute over the amount of wages the employer owes, the employer's refusal to pay is generally not arbitrary, and penalty wages are improper. *Id.*

Here, Creative was under a bona fide impression that it had some type of contract with Shay regarding the Dodge. My conclusion that there was no meeting of the minds does not vitiate Creative's good faith belief that it rightly retained Shay's wages. This, in turn, created a bona fide dispute over the amount, if any, Creative owed Shay in unpaid wages. Therefore, I would not find that penalty wages are due.

For the foregoing reasons, I respectfully dissent.

7