NORRIS, Judge.
The plaintiffs, 23 former employees of the Manville Forest Products Corp. (“Man-ville”) Specialty Bag Plant in West Monroe, sued Manville for vacation wages they were allegedly owed when Manville closed the plant in August 1981. Manville’s defense was that the plaintiffs had not followed the grievance procedure contracted in the collective bargaining agreement (“Agreement”) between Manville, its employees and their Union, United Paper-workers Union, AFL-CIO, Local No. 654 (“Union”). The trial court denied Man-ville’s peremptory exceptions and motion for summary judgment; after a bench trial, it granted judgment in favor of plaintiffs for the vacation wages due, legal interest and attorney fees. Manville has appealed suspensively, raising three issues:
(1) Whether the plaintiffs’ cause of action is barred for failure to exhaust their contractual remedies under the Agreement;
(2) Whether the plaintiffs’ cause of action has prescribed under the six-month prescriptive period of § 10(b) of the National Labor Relations Act, as amended; and
(3) Whether the plaintiffs are entitled to vacation wage benefits under the terms of the Agreement.
Because none of these arguments presents reversible error, we affirm the trial court’s judgment.
FACTS
Manville decided to close its Specialty Bag Plant, known as Plant No. 45, in the summer of 1981. Citing poor economic conditions, Manville officials met with Union representative in late July and early August to discuss the possibility of saving-some jobs by merging Plant 45 with another plant, but these negotiations were unsuccessful. Therefore when Manville posted notices in the plant on August 13 and 14, 1981, workers were informed that the closure was permanent and irrevocable, without any possibility of recall or assertion of seniority rights.[1] The notices also advised employees that severance pay would be disbursed in a lump sum. On the subject critical to this lawsuit, the notices informed employees that accumulated vacation pay would be given to those who were eligible for early retirement; it did not specify a policy for other employees.[2] The plant was formally closed at the end of August. The machinery was sold and removed from the premises. The employees simultaneously lost their Union membership because they no longer worked in the industry and because their dues, previously paid through salary deductions, lapsed.
In September 1981, the plaintiffs and some other former employees filed a grievance over the loss of seniority rights. Their objective was reinstatement with seniority at other Manville plants. The ag-grievants pursued the grievance procedure provided in the Agreement except that this particular grievance was started directly at the third step, where it was denied. The Union then received the grievance and, in accordance with its by-laws, submitted it to a vote at two consecutive meetings. The aggrievants were not allowed to vote at these meetings because they were no longer Union members. The voting members elected not to send the seniority grievance to arbitration.
The plaintiffs did not present a grievance over the vacation wages because if they had succeeded on the seniority issue, they would have been reinstated to employment and collected the wages in the usual fashion. Further, according to standard company procedures, vacation wages were never paid until the January after the year in which they accrued. Therefore in January *926 1982 the plaintiffs requested from Manville their vacation wages for the year 1981. They had already received their vacation wages for 1980. Manville denied the request, citing language in the Agreement that allegedly disqualified employees from collecting vacation pay unless they had been continuously employed for one year on January 1, 1982. Plaintiffs sent Man-ville a demand letter on February 15 and filed suit on February 23, 1982.
Manville initially filed exceptions of no cause and no right of action, which the trial court eventually overruled. The case was then stayed pending Manville’s bankruptcy reorganization. After the stay was lifted, the case was returned to state district court, which denied Manville’s subsequent motion for summary judgment and its exception of prescription. After a trial on February 6, 1986, the court entered judgment granting plaintiffs’ demands[3] for vacation wages.with interest from date of judicial demand, and attorney fees of $4,500. Manville has appealed suspensively-
In order to resolve the issues we have had to look at the nature of the right the plaintiffs asserted and at the appropriate provisions of the Agreement. We will therefore consider the arguments in a different sequence from that presented in Manville’s brief.
ARGUMENT NO. 3
In its third argument, Manville contends that under the terms of Art. XVII of the Agreement, the plaintiffs have no right to vacation wages. A careful reading of the Agreement will bear this out. Art. XVII, Sec. 1, provides in part:
All employees who on January 1 of any year have been continuously employed for one (1) or more years shall be entitled to vacation with pay subject to the provisions set forth in this Article; however, in order to be eligible for a vacation * * an employee must have completed at least ten hundred forty (1040) hours of work during the previous calendar year or during the twelve (12) month period prior to his or her scheduled vacation.
Article XVII, Sec. 3(d) further provides, in part:
* * * For the purpose of determining vacation benefits, an employee’s continuous service shall be broken in the event of: (1) discharge[.]
Under these provisions, if an employee was discharged on August 30, 1981, then he did not have one year’s continuous employment on January 1, 1982, when the vacation wages would otherwise accrue, and would be therefore disqualified from getting those wages.
' The plaintiffs contend, however, that under state law, this arrangement is invalid. LSA-R.S. 23:631 requires an employer to pay any discharged employee the amount of wages then due, within three days of discharge. Further, R.S. 23:634 prohibits contractual agreements whereby employees shall forfeit their wages if they are discharged before the contract is completed. Under this statute, discharged employees are entitled to collect the wages actually earned up to the time of discharge. The jurisprudence holds that vacation wages are additional wages and subject to the requirements of these statutes. Draughn v. Mart, 411 So.2d 1188 (La.App. 4th Cir.1982), writ denied 415 So.2d 944 (La.1982); Lee v. K & B Corp., 479 So.2d 459 (La.App. 1st Cir.1985). Moreover, R.S. 23:640 specifically addresses the situation in which the employment is regulated by a collective bargaining agreement. It provides that vacation benefits, conferred by agreement, shall be treated as wages and subject to the same provisions as to payment and collection from employers as wages under R.S. 23:631-639. These statutes, of course, entitle a discharged employee to a swift settlement of all wages.
We are therefore faced with a direct conflict between our statutes and the terms of the Agreement. Here, as always, the *927 contract is the law between the parties. LSA-C.C. art. 1983. The Agreement specifically addresses the issue of conflict between its provisions and a state or federal law. Art. XXIV provides:
Any Federal or State law, Federal or State Regulation, or any conclusive judicial interpretation thereof, which may conflict with any provisions of this Agreement, shall void only such provisions and not affect any other provision of this Agreement.
Under this Article, the Agreement yields to any conflicting state laws. Art. XVII of the Agreement, providing for forfeiture of vacation wages, obviously conflicts with LSA-R.S. 23:631 et seq., which prohibit such forfeiture. Under Art. XXIV, the statutes supersede the conflicting provisions of the Agreement.
We note that the plaintiffs have met every other requirement of the Agreement for receiving vacation wages; these provisions remain intact. The forfeiture provisions, however, cannot be honored, regardless of the precise language of the Agreement. Thus the third argument lacks merit.
ARGUMENT NO. 1
By this, its most expansive argument, Manville contends that the grievance procedure of Art. VIII of the Agreement was the exclusive means of settling the dispute; since the plaintiffs did not pursue it, Man-ville claims, their suit is barred. Manville cogently argues that federal law and jurisprudence favor extrajudicial settlement of grievances. 29 U.S.C. § 173(d); Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). Manville concedes that in some situations, the grievance process may be sidestepped, as in Barrentine v. Arkansas-Best Freight System, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), and in Amaro v. Continental Can Co., 724 F.2d 747 (9th Cir.1984), but that the instant case does not present any of these situations.
The plaintiffs contend that they were entitled to forego the grievance procedure because it is geared to settling disputes in the workplace, whereas the collection of past due wages is not a dispute in the workplace and not traditionally associated with a grievance process. They also argue that to follow the grievance procedure would have been vain and useless, as illustrated by their experience in pressing the seniority grievance: since they are not Union members, they have no voice in prosecuting the process to arbitration. Cf. O’Dell v. Int’l Paper Co., 280 So.2d 913 (La.1973).
The proper resolution of this issue, as the previous issue, hinges on Art. XXIV of the Agreement. This Article provides that portions of the Agreement that conflict with state law will yield to the state law. R.S. 23:640 provides that employees whose employment is regulated by a collective bargaining agreement shall pursue their claims for vacation wages “in the same manner and subject to [4] * * the same provisions as to collection and enforcement” as apply to ordinary wages under R.S. 23:631-639. One of these statutes, R.S. 23:632, specifically authorizes private lawsuit as the means of collecting wages and enforcing the wage laws. This is in direct conflict with Art. VIII of the Agreement, which establishes a procedure for resolving any “dispute or grievance arising out of the interpretation or application of the terms of [the] Agreement[.]” Because the conflicting statute takes precedence over part of the agreement, this suit was authorized without prior recourse to the grievance procedure.
We are naturally sensitive to the strong federal policy, ably argued by Manville in brief, in favor of extrajudicial settlement of grievances. In fact, this policy would seem to destroy the plaintiffs’ cause of action in the instant suit. However, the Supreme Court has recently recognized that a statute enacted to provide minimum substantive guarantees to individual workers may supersede collective bargaining agreements. At issue in Barrentine, supra, was the statute that guarantees a minimum wage, 29 U.S.C. § 206. The court said:
*928 Not all disputes between an employee and his employer are suited for binding resolution in accordance with the procedures established by collective bargaining. While courts should defer to an arbitral decision where the employee’s claim is based on rights arising out of the collective-bargaining agreement, different considerations apply where the employee’s claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers.
450 U.S. at 737, 101 S.Ct. at 1443, 67 L.Ed.2d at 651.
We agree that LSA-R.S. 23:631, 634 and 640 show legislative intent to confer on workers, regardless of contrary arrangements, the right to be paid promptly upon discharge. See Johnson v. Continental Slip Form Bldrs., 449 So.2d 56 (La.App. 5th Cir.1984).
Given the Supreme Court’s acknowledgment in Barrentine that certain basic rights may be asserted outside the grievance procedure, the positive recognition in Art. XXIV of the Agreement that state statutes will supersede conflicting provisions, and the plain intent of R.S. 23:631 et seq. to confer certain basic rights, we conclude that this lawsuit was properly brought. The plaintiffs were not required to follow the grievance procedure. This argument lacks merit.
ARGUMENT NO. 2
By this argument, Manville contends that the suit should have been barred because it was not filed within the six-month prescriptive period allegedly imposed by § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). The Agreement itself does not specify any time limit for an action to collect vacation pay.[4] Plaintiffs contend that the case should be governed by LSA-C.C. art. 3494, which sets a limit of three years on any “action for the recovery of compensation for services rendered, including payment of salaries [and] wages[.]”
We have closely examined the text of the federal statute. It provides, in part:
(b) Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board, or any agent or agency designated by the Board for such purposes, shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect * * * Provided, That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made[.]
A plain reading of this statute shows that it contemplates a “complaint” issued by the National Labor Relations Board, a federal agency, directed to an employer or a union and alleging an unfair labor practice as described by the statute. The instant suit is not an NLRB “complaint” or citation, but rather a private lawsuit to enforce a right, established by state law, in favor of former employees who have no further connection with their employer or union. Moreover, the plaintiffs are not asserting any unfair labor practice as described by the NLRA.[5] Thus, *929 it is abundantly clear that this statute is inapplicable to the instant case. See Carpenters Local v. Pratt-Famsworth, 609 F.Supp. 1299 (E.D.-La.l984).
By contrast, LSA-C.C. art. 3494 fits precisely into the relief sought in this case, payment of past due wages. The prescriptive period provided by this article is therefore appropriate. Johnson v. Continental Slip Form Bldrs., supra; Carpenters Local v. Pratt-Famsworth, 609 F.Supp. 1302 (E.D.-La.l984). We note the amendment that extended this prescription from one to three years. See LSA-Acts 1983, No. 173. We would be inclined to hold that the amendment is retroactive. See Lott v. Haley, 370 So.2d 521 (La.1979); Orleans Parish Sch. Bd. v. Pittman Const. Co., 261 La. 665, 260 So.2d 661 (1972). However, we need not face this issue. The refusal to pay vacation wages occurred in August 1981; suit was filed on February 23, 1982 and was timely under either prescriptive period. This argument lacks merit.
For these reasons, the judgment appealed from is affirmed at Manville’s costs.
AFFIRMED.

. Three maintenance employees and one electrician were allowed to exercise seniority at the other plants in accordance with a supplemental agreement. All other employees, including the plaintiffs, lost their seniority.

. The notice provided as follows:
Employees will be entitled to receive vacation pay for any unused vacation that they are entitled to use in 1981. Those employees who are eligible for early or normal retirement and who qualify with the required 1040 hours will receive vacation pay accumulated in 1981.

. One plaintiff was voluntarily dismissed because he did not meet the 1040 hour requirement of Art. XVII, Sec. 1.

. Art. VIII, Sec. (a)l provides that an aggrieved employee must present his oral complaint to his immediate supervisor within five days of the act or omission that gave rise to the grievance. Manville has not argued that this is a period of limitations, and we would not be inclined to hold it so when the relief sought is more particularly governed by the Civil Code.

. Sec. 8(a) of the NLRA makes it an unfair labor practice for an employer—
(1)to interfere with, restrain, or coerce employees in the exercise of the rights [of self-organization, joint labor organizations, bargaining collectively, etc.];
(2) to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it * * *;
(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization
[[Image here]]
(4) to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this Act;
(5) to refuse to bargain collectively with the representatives of his employees * * *.