824 So.2d 347 (2002)
Leo AGUILLARD, et al.
v.
CROWLEY GARMENT MANUFACTURING COMPANY, et al.
Brenda Brandon, et al.
v.
Crowley Garment Manufacturing Company, et al.
Nos. 01-594, 01-593.
Court of Appeal of Louisiana, Third Circuit.
February 27, 2002.
Rehearing Denied April 10, 2002.
Writs Denied August 30, 2002.
*349 Patrick M. Wartelle, Roy, Bivins, Judice & Henke, Lafayette, LA, for Plaintiffs/Appellants: Leo Aguillard, et al., Brenda Brandon, et al.
William H. Parker, III, Allen & Gooch, Lafayette, LA, for Defendants/Appellants: Crowley Garment Manufacturing Company, Fechheimer Company a/k/a Fechheimer Brothers Company.
Dion Y. Kohler, Donna W. Vales, Jackson, Lewis, Schnitzler & Krupman, Atlanta, GA, for Defendants/Appellants: Crowley Garment Manufacturing Company, Fechheimer Company a/k/a Fechheimer Brothers Company.
Court composed of ULYSSES GENE THIBODEAUX, JIMMIE C. PETERS, and MICHAEL G. SULLIVAN, Judges.
SULLIVAN, Judge.
Seven supervisors and over one hundred other employees, formerly on the payroll of Crowley Garment Manufacturing Company, filed two rules to show cause for vacation pay, penalty wages, and attorney fees, alleging violations of La.R.S. 23:631 upon the plant's closure in August of 1999. Named as Defendants were Crowley Garment and its parent corporation, Fechheimer Brothers Company. Fechheimer Brothers later stipulated that it would be financially responsible for any judgment rendered against Crowley Garment in this litigation.
After hearing the merits of the supervisors' claims, the trial court granted their requests for vacation pay and attorney fees, but declined to award penalty wages. As to the non-supervisory employees, the trial court found that the collective bargaining agreement governing their claims required that they proceed with arbitration before filing suit. Accordingly, the trial court dismissed the claims of these employees without prejudice by granting Defendants' exceptions of lack of subject matter jurisdiction and prematurity. For the following reasons, we affirm the trial court's rulings as to the supervisors, but reverse as to the other employees, and remand.

Facts and Procedural History
Crowley Garment purchased the plant in Crowley, Louisiana, from Glen Oaks Manufacturing in August of 1998. After the sale, the non-supervisory employees at the Crowley plant became members of UNITE, a labor union representing workers in the textile industry. Between January and March of 1999, UNITE and Defendants negotiated a collective bargaining *350 agreement covering the non-supervisory employees. A union representative signed the agreement on March 31, 1999, and immediately thereafter, Defendants began deducting union dues from employee paychecks and remitting them to UNITE, as required by the agreement. Defendants' representative, however, did not sign the agreement until after the plant had closed.
The collective bargaining agreement contained the vacation policy covering the non-supervisory employees, while the supervisors' vacation policy was found in Crowley Garment's employee manual. The two policies did not use identical language, but both essentially provided that vacations could only be taken during the plant's two scheduled shutdowns in the weeks of July 4 and of December 25. Under both policies, vacation pay would be determined by each employee's length of service with the company and by his or her hourly wages, which for some included incentives based upon performance. The language of each policy will be discussed more fully below.
In June of 1999, Crowley Garment announced that the plant would be closing in August of 1999. On August 11, 1999, the plant manager, Don Rhodes, and Fechheimer's vice-president of manufacturing, Doug Adams, met with union and employee representatives to discuss the effects of the closure. At this meeting, the union inquired about vacation pay for the July and/or December vacation periods. A second meeting occurred on September 9, 1999, with only Mr. Rhodes present as a representative of the company. Mr. Rhodes informed the employees that he did not have authority to act on their request for vacation pay, but that he would relay their concerns to senior management. By a fax to Mr. Muhammad dated September 22, 1999, Mr. Adams rejected employee demands for vacation pay.
Mr. Muhammad testified in his deposition that, although the vacation issue was never settled, it was clear that the September 22 memo represented the company's final offer. According to Mr. Muhammad, the employees asked that the union help them in future legal proceedings, but he responded that the union did not see "anywhere we could go in terms of the grievance process."
On December 2, 1999, Mr. Adams received a letter in which numerous employees, identifying themselves as the "Crowley Garment Employee Committee," requested immediate payment of "accrued vacation, holiday and any other accrued wages and compensation, plus interest that began to accrue three days after each employee's separation." After receipt of this letter, Defendants maintained their position that no vacation pay was owed.
On January 14, 2000, ninety-four Plaintiffs filed a rule to show cause, alleging Defendants failed to tender vacation pay within three days of termination of employment, in violation of La.R.S. 23:631. They also sought penalty wages and attorney fees under La.R.S. 23:632. On April 18, 2000, an additional thirteen Plaintiffs filed an identical rule. Defendants removed both rules to federal district court. That court, however, subsequently granted Plaintiffs' motion to remand to state court, where the two rules were consolidated. Shortly before trial, the attorneys discovered that seven Plaintiffs were supervisory employees and, therefore, not subject to the collective bargaining agreement. Although the claims of these employees were tried separately, they remain consolidated with the others on appeal.

*351 Opinion

Vacation Pay for Supervisors
Defendants have appealed the award of vacation pay to the seven supervisors,[1] arguing that under their vacation policy, those employees did not accrue vacation as they worked. Therefore, because the supervisors were no longer employees at the time of the December 1999 vacation break, having been terminated in August of that year, they were not entitled to vacation pay for that period. Plaintiffs respond that the Defendants' failure to pay them for the December vacation period amounts to an illegal forfeiture of wages under La.R.S. 23:631.[2]
La.R.S. 23:631 provides in part:
A. (1)(a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, not later than three days following the date of discharge.

. . . .
D. (1) For purposes of this Section, vacation pay will be considered an amount then due only if, in accordance with the stated vacation policy of the person employing such laborer or other employee, both of the following apply:
(a) The laborer or other employee is deemed eligible for and has accrued the right to take vacation time with pay.

(b) The laborer or other employee has not taken or been compensated for the vacation time as of the date of the discharge or resignation.
(2) The provisions of this Subsection shall not be interpreted to allow the forfeiture of any vacation pay actually earned by an employee pursuant to the employer's policy.

(Emphasis added.)
"[E]very court of appeal that has addressed the issue has held that accrued vacation pay is wages under La.R.S. 23:631." Beard v. Summit Inst. of Pulmonary Med. & Rehab., Inc., 97-1784, p. 4 (La.3/4/98); 707 So.2d 1233, 1235 (emphasis added). Under La.R.S. 23:634, an employee may not be required to sign a contract by which he forfeits wages if he is discharged or if he resigns before the contract is completed. In Beard, 707 So.2d at 1235, the supreme court recognized that if an employer cannot compel the forfeiture of wages by contract, that same employer cannot "require an employee to forfeit wages simply by enacting a policy to that effect." Therefore, an employment policy that requires the forfeiture of accrued but unused vacation time is illegal. Id.; see also Winkle v. Advance Prods. & Sys., 98-694 (La.App. 3 Cir. 10/28/98); 721 So.2d 983, recognizing that an unwritten forfeiture policy is also illegal.
In the present case, the issue for review is whether the Crowley Garment policy permitted the accrual of vacation. As we stated in Winkle, 721 So.2d at 986, "`Accrued' means `vested.'"
A vested right is defined as that case when "the right to enjoyment, present or prospective, has become the property of *352 some particular person or persons as a present interest. The right must be absolute, complete and unconditional, independent of a contingency, and a mere expectancy of future benefit ... does not constitute a vested right."
Berteau v. Wiener Corp., 362 So.2d 806, 808-809 (La.App. 4 Cir.), writ denied, 365 So.2d 242 (La.1978), quoting Tennant v. Russell, 214 La. 1046, 39 So.2d 726 (1949) (emphasis added).
Mr. Rhodes, the plant manager, testified that the supervisors' vacation policy was found in the employee handbook. That policy stated:
VACATIONS
Policy:
It is the policy of the Company to grant vacations with pay to full-time employees in accordance with the guidelines established below:
Comment:
The Company has two scheduled vacation periods:
Summer Vacation The week of July 4th
Winter Vacation The week of December 24th
Vacations are accrued or earned on the employee's length of service preceding the next scheduled vacation.

Length of Service Hours Paid
-----------------------------------
0 to 6 months 0
6 months to 1 year 20
1 to 10 years 40
10 to 15 years 80 Summer only
15 or more years 80 Summer & Winter

Vacation pay is based upon an employee's preceding 12 Week Average.
(Emphasis added.)
Mr. Rhodes testified that, in his nineteen years as plant manager with both Glen Oaks and Crowley Garment, he did not recall any employee not on the payroll at vacation time as receiving a vacation check. He further stated that no employee who was terminated or who resigned before the next scheduled vacation ever requested vacation pay for that period. Bradley Kinstler, the president of Fechheimer Brothers, testified that he made the decision that no vacation pay was owed based upon the policy and procedures at the Crowley Garment plant. He explained that the vacation policy applied only to employees, not former employees.
Under the Crowley Garment policy, the right to enjoy the December vacation was a prospective benefit for those employees terminated in August. However, this fact alone has not defeated recovery of vacation pay. In Macrellis v. Southwest Louisiana Independence Center, 94-1155 (La.App. 3 Cir. 5/3/95); 657 So.2d 135, the employer's policy permitted the use of vacation only after an employee completed a probationary period, attained full-time status, and had been employed for one year. Three employees who were terminated before their first anniversary date were, nonetheless, awarded vacation pay because: "Although the right to enjoy the annual leave was prospective, it became the property of the employee as it was earned during the first year of employment. Thus, the earned annual leave was an `amount then due' under La.R.S. 23:631(A)." Id. at 137.
In Evans v. Manville Products Corp., 505 So.2d 924 (La.App. 2 Cir.), writ denied, 508 So.2d 824 (La.1987), cert. denied, 484 U.S. 1004, 108 S.Ct. 696, 98 L.Ed.2d 648 (1988), employees who had lost their jobs when their plant closed in August of 1981 sued for vacation wages that, pursuant to company procedure, would not have been due until the January of the following year. The employer's policy also provided that eligibility for vacation depended upon one year's continuous service, which would be broken in the event of discharge. The court refused to enforce the policy as written, finding that it illegally required employees to forfeit vacation earned prior to their discharge in August, even though *353 they would not have been entitled to those benefits until the following January.
In ruling in the supervisors' favor, the trial court relied on Picard v. Vermilion Parish School Board, 98-589 (La.App. 3 Cir. 6/23/99); 742 So.2d 589, writ denied, 99-2197 (La.11/19/99); 749 So.2d 675, in which the employer's policy did not address how unused vacation would be handled upon termination. In that case, we stated:
[W]e find that where an employment policy provides for the accrual of vacation time upon the completion of a specified amount of work, the policies against forfeiture of wages dictate that an employee's rights vest once the condition precedent, the allotment of work, is completed. We now hold that in the absence of a clear, written policy establishing that vacation time granted by an employer to an employee is nothing more than a mere gratuity and not to be considered an amount due or a wage, accrued but unused vacation time is a vested right for which an employee must be compensated upon discharge or resignation.

Id. at 595-96 (emphasis added).
In the present case, the policy provides that vacation is "accrued or earned" based upon an employee's length of service with the company, even though the use or enjoyment of vacation is limited to only two specified times per year. The policy also links the amount of vacation pay to the employee's performance at work. Further, the policy is silent as to how vacation pay will be handled upon termination. Under these circumstances, we cannot conclude that vacation benefits are a gratuity as opposed to wages, as was the case in Huddleston v. Dillard Department Stores, Inc., 94-53 (La.App. 5 Cir. 5/31/94), 638 So.2d 383. Accordingly, we find no error in the trial court's finding that the seven supervisory employees are entitled to compensation for the December vacation period. As Defendants have not contested the amount of each award, that portion of the trial court judgment is affirmed.

Penalty Wages
The seven supervisors argue on appeal that the trial court erred in failing to award penalty wages. The authority for penalty wages is found in La.R.S. 23:632, which provides in part:
Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages.
Jurisprudence has considered this statute's coercive nature in holding that it must be strictly construed and that it must yield to equitable defenses. Beard, 707 So.2d 1233[3]. Thus, only a "a good-faith, non-arbitrary defense to liability for unpaid wages, i.e., a reasonable *354 basis for resisting liability" will prevent a court from imposing penalty wages. Richard v. Vidrine Automotive Servs., Inc., 98-1020, p. 6 (La.App. 1 Cir. 4/1/99); 729 So.2d 1174, 1178, quoting Carriere v. Pee Wee's Equip. Co., 364 So.2d 555, 557 (La. 1978). A trial court's finding of good or bad faith is a question of fact subject to the manifest error standard of review. Winkle, 721 So.2d 983.
In Beard, 707 So.2d at 1237, the supreme court held that "[r]eliance on an unlawful company policy does not constitute a good faith non-arbitrary defense to liability for unpaid wages." Based upon this language, Plaintiffs argue that Defendants have failed to present such a defense in light of Mr. Kinstler's testimony that the sole reason he did not authorize payment of vacation pay was his reliance on Crowley Garment's vacation policy.
The employer's policy in Beard specifically stated that "[w]hen an employee abandons his/her position, all accrued benefits are forfeited." Id. at 1239. Under these circumstances, the supreme court found that the employer could not in good faith rely on that policy in light of "the plethora of other cases ... holding that a company policy requiring the forfeiture of earned wages or vacation pay violates La. R.S. 23:634." Id. at 1237. See also Brown v. Navarre Chevrolet, Inc., 610 So.2d 165, 171 (La.App. 3 Cir.1992) (reliance on policy of deducting "fines" from employee's earnings would not defeat penalty wages, as policy was in "direct violation of Louisiana law") and Duhon v. Prof Erny's Music Co., Inc., 328 So.2d 788 (La.App. 3 Cir. 1976) (reliance on policy requiring terminated employees to sign form before receiving final payment of wages would not defeat penalty wages, as the law imposed no such condition).
In the present case, Mr. Kinstler testified that he relied on Crowley Garment's written policy as well as the practices and procedures at the plant in determining that no vacation pay was owed. Those practices included a nineteen-year history in which no employee ever requested vacation wages upon termination. Under these circumstances, we cannot conclude that the employer was precluded from raising a good faith defense. See Baudoin v. Vermilion Parish Sch. Bd., 96-1604 (La.App. 3 Cir. 4/2/97); 692 So.2d 1316, writ denied, 97-1169 (La.6/20/97); 695 So.2d 1358 and Draughn v. Breaux Mart, 411 So.2d 1188 (La.App. 4 Cir.), writ denied, 415 So.2d 944 (La.1982). Additionally, there is no evidence that Defendants arbitrarily treated any employee differently under their vacation policy, as was the case in Scott v. Ouachita Parish School Board, 33,964 (La. App. 2 Cir. 9/27/00); 768 So.2d 702 (where the superintendent had the sole discretion to set each employee's "termination date" under different criteria) and in Macrellis, 657 So.2d 135 (where the employer paid vacation wages to some terminated employees, but not to others). Accordingly, we find no error in the trial court's refusal to award penalty wages.

Attorney Fees
The trial court awarded attorney fees of $25,000.00 to the seven successful Plaintiffs. The authority for this award is also found in La.R.S. 23:632, which provides in part:

Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.
(Emphasis added.) Unlike penalty wages, a trial court does not have discretion *355 to deny attorney fees in any well-founded suit under La.R.S. 23:631. Carriere, 364 So.2d 555.
Defendants offer several arguments that the $25,000.00 attorney fee award is excessive. They first contend that the award improperly includes compensation for legal work performed on behalf of the unsuccessful Plaintiffs because Plaintiffs' attorney failed to delineate the time spent on behalf of the supervisors in his affidavit of total hours submitted to the trial court. They also argue that the award is unreasonable in comparison to the small amount that each successful litigant recovered and in considering that it is approximately five times the total amount recovered.
For the following reasons, we find no abuse of discretion in the trial court's award of attorney fees. As Plaintiffs note, Defendants attempted to remove all claims to federal court on the basis of federal question jurisdiction, even though federal law did not apply to the claims of supervisors, as they were not subject to the collective bargaining agreement. Although both sides were apparently unaware that some of the Plaintiffs were supervisors, the work performed in defeating Defendants' motion to remove, nonetheless, benefitted the supervisors as well as the other employees. Additionally, in making its award of attorney fees, the trial court specifically stated that it did not consider the work performed on behalf of the other Plaintiffs. Finally, we do not find the award excessive, in light of "the policy of La.R.S. 23:632 of encouraging workers to assert their rights to those wages and motivating attorneys to prosecute those suits to insure that the working people of this state will not be deprived of their earnings[.]" Beard, 707 So.2d at 1238. The award of attorney fees is hereby affirmed.

Claims of Non Supervisory Employees
Defendants filed several exceptions to the claims of the non-supervisory employees, arguing that these Plaintiffs failed to invoke the grievance and arbitration procedures as provided in the collective bargaining agreement and that their claims are preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. After finding that these Plaintiffs should have proceeded in arbitration before filing suit, the trial court dismissed their claims without prejudice.
Plaintiffs first argue that they were not bound by the arbitration and grievance provisions because Defendants never signed the collective bargaining agreement until after the plant had closed; hence, the agreement was never effective. The trial court found that the law did not require the Defendants' signature, as their actions demonstrated their intent to be bound by the agreement.
"It is well settled that a union and employer's adoption of a labor contract is not dependent on the reduction to writing of their intention to be bound. Instead, what is required is conduct manifesting an intention to abide by the terms of the agreement." National Labor Relations Bd. v. Haberman Constr. Co., 641 F.2d 351, 355-56 (5 Cir.1981) (footnote omitted) (citations omitted). Whether the parties have entered into a contract is a question of fact subject to the clearly erroneous standard of review. Carpenters Amended and Restated Health Benefit Fund v. Holleman Const. Co., 751 F.2d 763 (5 Cir.1985). In Haberman, 641 F.2d 351, the court found the employer's intent to abide by an agreement based upon its contributions to union trust funds, its exclusive use of union workers, and its observation of the union pay scale and holidays.
*356 In the case sub judice, it is undisputed that Defendants complied with several provisions of the contract, including collecting and remitting union dues on behalf of certain employees, implementing an immediate hourly wage increase as provided in the contract, and making insurance payments to the union trust fund. Mr. Muhammad, the union representative, stated that after the effective date of the agreement, the employees organized committees and elected stewards, as provided in the contract. Mr. Muhammad testified that the union was "nervous" about whether the company would honor the agreement; nonetheless, the union took the position that a contract existed, especially when it became clear the plant would close.
The cases cited by Plaintiffs in which the courts did not find a valid agreement are clearly distinguishable. In Firesheets v. A.G. Building Specialists, Inc., 134 F.3d 729 (5 Cir.1998), the agreement in question required that any modification be in writing. Three months before the agreement expired, the employer gave written notice of its intent to terminate the contract, and no written modifications were executed to extend it. Although the employer continued to make some union contributions, it also hired non-union workers, failed to adjust wages, and did not give holiday pay, all in contravention of the original agreement. The court found that these actions did not support the existence of a collective bargaining agreement. In the present case, the contract does provide that it "may not be modified in any respect except by writing subscribed to by the parties." However, here, we are not concerned with a modification of the contract, but rather with the original agreement.
Furthermore, Firesheets, 134 F.3d 729, concerned Section 302(c) of the Labor Management Relations Act, 29 U.S.C. § 186(c), which prohibits an employer from making certain union contributions in the absence of a "written agreement." Because of the policies underlying that particular provision, some courts have interpreted "written agreement" as it appears in that section to mean a signed contract. The distinction between cases applying Section 302(c) and those such as Haberman, 641 F.2d 351, is clearly pointed out in Merrimen v. Paul F. Rost Electric, Inc., 861 F.2d 135 (6 Cir.1988). Unlike Firesheets and Pipefitters Local Union No. 562 v. Best Bet Welding & Fabrication, Inc., 766 F.Supp. 761 (E.D. Missouri 1991), upon which Plaintiffs also rely, the instant case does not concern Section 302(c). Based upon the above, we find no error in the trial court's conclusion that Defendants' failure to sign the collective bargaining agreement did not affect the agreement's validity in light of the evidence demonstrating their intent to be bound by it.
Plaintiffs next argue that the trial court erred in not following Evans, 505 So.2d 924. In that case, the court refused to enforce the arbitration and grievance provisions of a collective bargaining agreement that contained an illegal vacation wage forfeiture policy. The Evans decision was based upon Barrentine v. Arkansas-Best Freight System, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), in which the United States Supreme Court recognized that "a statute enacted to provide minimum substantive guarantees to individual workers may supersede collective bargaining agreements." Evans, 505 So.2d at 927. Although the Barrentine case concerned alleged violations of a federal law, the Fair Labor Standards Act, 29 U.S.C. § 206, the Supreme Court extended its reasoning to state statutes in Metropolitan Life Insurance Co. v. Massachusetts, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985).
*357 Defendants argue that because La. R.S. 23:631 does not mandate vacation benefits for all workers, Plaintiffs' rights under that statute are derivative rather than substantive. We disagree. La.R.S. 23:631 concerns more than the timely payment of wages. By prohibiting the forfeiture of accrued wages, the statute ensures that workers will be paid the wages that they have actually earned. As pointed out in Evans, under La.R.S. 23:634, the rights granted in 23:631 are non-waivable, and under La.R.S. 23:640, vacation benefits conferred by agreement are collectable as wages, i.e., in a judicial forum. We agree with Evans that these statutes do provide minimum substantive guarantees to individual workers.
Defendants also seek to distinguish Evans by arguing that the present claims are preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Recognizing Section 301's mandate that uniform federal law should govern the application of collective bargaining agreements, the United States Supreme Court has held that any state law claim whose resolution requires the interpretation of such an agreement is preempted. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). Defendants contend that the policy under consideration in Evans violated La.R.S. 23:631 on its face; therefore, no interpretation of that collective bargaining agreement was required. Here, they contend, the policy must be interpreted to resolve Plaintiffs' claims.
The vacation policy in the collective bargaining agreement provided as follows:
ARTICLE 8 VACATIONS
A. The Employer shall provide a full week of vacation during the week of July 4, and a full week of vacation during the week of December 25.
B. Vacation pay shall be earned by the Employees based on years of service. Employees with between 6 months and 1 year of service shall be paid 20 hours per vacation week. Employees with more than one year of service shall be paid 40 hours per vacation week.
C. After 10 years of service, the Employer shall pay 40 hours of pay as a service bonus, payable at the summer vacation. After 15 years of service, the Employer shall pay 40 hours of service bonus, payable at the winter vacation, in addition to the summer service bonus.
D. All vacation pay and service pay shall be at the employee's average hourly earnings.
E. Employees on leaves provided in Article 17 other than jury duty shall not continue earn vacation after 30 consecutive calendar days of such absence.

F. Employees on layoff shall continue to earn vacation leave for a period of three months after their date of layoff

(Emphasis added.)
Under this policy, the employer is obligated to provide two full weeks of vacation, with vacation pay to be determined upon the employee's years of service. The obligation to provide vacation and the method for determining pay are stated in mandatory terms. Further, this policy contains additional language clarifying that vacation is earned during leave time or on layoff, making it more analogous to Macrellis, 657 So.2d 135, than the policy covering the supervisors.
In Balcorta v. Twentieth Century-Fox Film Corp., 208 F.3d 1102 (9 Cir.2000), the court recognized that a state wage payment claim will not be preempted where the provisions of the collective bargaining *358 agreement have to be read and applied to resolve the claim, but where they require no interpretation. In the present case, the problem of forfeiture arises not with the language of the policy, but rather with Defendants' application of the policy. Article 21 of the collective bargaining agreement remedies any conflict with state or federal law by providing that "such provision shall be deleted from this Agreement or shall be deemed to be in effect only to the extent permitted by such law or regulation." (Emphasis added.) Accordingly, we find that the trial court erred in not permitting these Plaintiffs to proceed with their suit.

Decree
For the above reasons, the judgment of the trial court awarding vacation pay and attorney fees and denying penalty wages to the supervisory employees is affirmed. The judgment of the trial court sustaining Defendants' exceptions of lack of subject matter jurisdiction and prematurity as to the claims of the non-supervisory employees is reversed, and the case is remanded for further proceedings consistent with this opinion. Costs of this appeal are assessed to Defendants, Crowley Garment Manufacturing Company and Fechheimer Brothers Company.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THIBODEAUX, J., concurs in part and dissents in part and assigns written reasons.
THIBODEAUX, J., concurring in part and dissenting in part.
I agree with the majority's opinion in its entirety with the exception of its refusal to award penalty wages. The majority concludes that penalty wages are subject to equitable defenses. The language of La. R.S.23:631 is unambiguous in its mandatory terms requiring the imposition of penalty wages to an employee who prevails at trial. I agree with the sentiments expressed in Domite v. Imperial Trading Co., Inc., 94-16(La.App. 3 Cir.8/3/94); 641 So.2d 715.
NOTES
[1] The seven supervisors were awarded vacation pay as follows: Delores Bellard $651.20; Brenda Brandon$744.00; Merline Broussard$713.60; Evelyn Doty $772.80; Aurelia Leger$722.80; Alice Sherman $713.60; and Theresa Wilson $768.80.
[2] Plaintiffs also allege that those employees who were laid off before July of 1999 are entitled to accrued vacation pay for that vacation period.
[3] In Domite v. Imperial Trading Co., 94-16 (La.App. 3 Cir. 8/3/94); 641 So.2d 715, another panel of this court concluded that a claim for penalty wages under La.R.S. 23:632 is not subject to equitable defenses. However, two other panels of this court declined to follow Domite in Harvey v. Bass Haven Resort, Inc., 99-909 (La.App. 3 Cir. 2/2/00); 758 So.2d 264 and Hebert v. Insurance Center, Inc., 97-298 (La.App. 3 Cir. 1/7/98); 706 So.2d 1007, writ denied, 98-353 (La.3/27/98); 716 So.2d 888. The latest expression of the supreme court on this issue is found in Beard, 707 So.2d 1233, which again recognized the distinction that penalty wages under La.R.S. 23:632 are subject to equitable defenses, while attorney fees are not.