STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

24-57

PAMELA PRATT-COOK

VERSUS

CHARLES RAY COOK, SR.

**********

APPLICATION FOR SUPERVISORY WRIT FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. 93352 B
HONORABLE LALA B. SYLVESTER, DISTRICT JUDGE

**********

**GARY J. ORTEGO**
**JUDGE**

**********

Court composed of, Shannon J. Gremillion, Jonathan W. Perry, and Gary J. Ortego,
Judges

WRIT GRANTED. RELIEF GRANTED;
JUDGMENT REVERSED AND
RENDERED.

**William Daniel Dyess**
**Dyess Law Firm, LLC**
**207 Church Street, Suite 106**
**Natchitoches, LA 71457**
**(318) 352-5880**
**COUNSEL FOR PLAINTIFF/APPLICANT:**
**Pamela Pratt-Cook**

**Jason Orin Methvin**
**Attorney At Law**
**113 South Drive, Suite #8**
**Natchitoches, LA 71457**
**(318) 238-4145**
**COUNSEL FOR DEFENDANT/RESPONDENT:**
**Charles Ray Cook, Sr.**

**ORTEGO, Judge.**

This case involves divorce proceedings. Plaintiff-Relator, Pamela Pratt Cook (now "Edwards"), seeks supervisory writs from the judgment of the Tenth Judicial District Court, Parish of Natchitoches, the Honorable Lala B. Sylvester, presiding, ordering Relator to pay her former spouse, Defendant, Charles Ray Cook, Sr. (hereinafter "Cook"), his alleged share of her retirement benefits.

## STATEMENT OF THE CASE

Edwards and Cook were married on June 27, 1981. During their marriage, Edwards was employed at Northwestern State University (NSU), and she was enrolled in the Louisiana State Employees Retirement System (LASERS). In 2019, while Edwards and Cook *were still married*, Edwards entered the State's Deferred Retirement Option Plan (DROP), and she then withdrew a lump sum of money from her DROP fund before retiring in 2020. In July 2020, Edwards retired from her employment at NSU, and she subsequently began drawing her LASERS retirement pension of approximately $3,000.00 per month.

Two years post-retirement, on July 5, 2022, Edwards filed a petition for divorce. In Paragraph 5 of that petition, she alleged that the couple physically separated on July 4, 2022, and lived separate and apart from that date. Cook answered her petition and in Paragraph 1 admitted that the couple physically separated on that date by stating, "Allegations 1 through 6 are admitted."

On March 13, 2023, a judgment of divorce was entered, and the former community of acquets and gains was terminated retroactive to July 5, 2022. On January 30, 2023, which was after the divorce was filed but before the entry of the divorce judgment, Edwards went back to work as a full-time employee at NSU, and her monthly LASERS retirement benefits were suspended in accordance with La.R.S. 11:416, La.R.S. 11:416.1, and La.R.S. 11:442. Before her reemployment

and Edward's retirement benefits were suspended, she had received 31 monthly benefit payments for a total of $93,000.00, including her DROP lump sum.

On February 10, 2023, Cook filed a petition for the division of the parties' community property, including Edwards' LASERS retirement benefits. Because Edwards' retirements benefits had been suspended due to her reemployment with NSU, Cook asked the trial court for an immediate payment in the amount that he would have received had Edwards not reentered the work force. Following a hearing, the trial court granted Cook's request and ordered that his ownership interest in Edwards' LASERS retirement account be calculated and paid to him retroactive to the date that Edwards began receiving her fully vested and matured LASERS benefits. The court held that Edwards is indebted to Cook for his share of Edwards' DROP benefits, along with her monthly LASERS retirement benefits. Additionally, the court ordered Edwards' counsel to prepare an order calculating Cook's ownership interest in Edwards' LASERS retirement funds and ordering that either: (1) Cook be allowed to immediately begin drawing his share of Edwards' retirement benefits or (2) Edwards directly pay Cook an amount equal to his ownership interest in the LASERS retirement benefits that Edwards would have received had she not returned to work. Edwards filed this writ seeking review of the trial court's ruling. The trial court's proceedings have been stayed pending this court's ruling on the instant writ application.

## SUPERVISORY RELIEF

"The proper procedural vehicle to seek review of an interlocutory judgment that is not immediately appealable is an application for supervisory writ." *Johno v. Doe*, 16-0200, p. 4 (La.App. 4 Cir. 8/17/16), 198 So.3d 1216, 1218 (citations omitted).

2

## ON THE MERITS

The trial court's judgment in this matter consists of two relevant parts: (1) that either Edwards or LASERS is indebted to Cook for continuous benefits for his one-half share retroactive to the date Edwards began to receive her now-suspended benefits from her retirement in July 2020, or Edwards and LASERS are indebted to Cook for his one-half share of the monthly LASERS retirement benefit that Edwards would have received had she not voluntarily returned to work; and (2) that Edwards is indebted to Cook for his one-half share of a lump sum DROP withdrawal/ payment she received during their marriage and prior to their divorce and her retirement.

*I.    Application of Sims v. Sims and La.R.S. 11:291(G)*

In the instant writ application, Edwards argues that the trial court erred in finding that either she or LASERS is currently indebted to Cook for benefits despite those benefits not being payable prior to Edwards' retirement, and thus deviates from a long line of Louisiana cases, starting with *Sims v. Sims,* 358 So.2d 919 (La.1978). Further, Edwards maintains that the trial court's finding also violates La.R.S. 11:291(G).

In *Sims*, 358 So.2d at 922, the Louisiana Supreme Court held that the non-employee spouse is entitled to a judgment recognizing his or her interest in the other spouse's pension benefits only (emphasis added), "*if and when they become payable*, with the spouse's interest to be recognized as one-half of any payments to be made, insofar as they are attributable to the other spouse's contributions or employment during the existence of the community." This recognition of payments to the non-employee ex-spouse and those payments not being due until becoming payable is echoed and codified in La.R.S. 11:291(G) (emphasis added), which states, "[A] state or statewide retirement system ***shall not*** pay any funds to any persons until such

funds normally become payable as provided by the laws governing the retirement system[.]"

Cook argues that the *Sims* line of cases should not apply because the facts in the present matter are distinguishable, as being a "re-retirement." Cook notes that the community interest in the retirement benefits in the instant case matured once Edwards originally left her employment in July 2020. Thus, Cook contends that he acquired a vested property interest in the retirement benefits once the community of acquets and gains was terminated retroactive to July 5, 2022. Further, Cook contends that the amount of his interest in the retirement benefits was quantifiable because the amount of the retirement benefits was set at $3,000.00 per month.

We find Cook's arguments misplaced. We agree that Cook acquired a vested percentage interest in Edward's retirement once the community was terminated. However, we find the *payment* to Cook, by either Edwards or LASERS, of his portion of those benefits *shall* not be payable prior to Edward's retirement or in this case her re-retirement. La.R.S. 11:291(G); *Sims,* 358 So.2d 919.

Finally, Cook argues that there is a distinction between Edwards' retirement, receiving her retirement benefits (along with Cook receiving his proportionate share) and then her return to work and suspension of her retirement benefits until her later retirement/re-retirement. In other words, Cook argues that once Edwards retired in 2022, specifically because of his alleged "need" to continue receiving his proportionate share, it is of no moment that she returned to work and is no longer eligible for payment/receipt of retirement benefits. As discussed above, we find the legal reasoning is the same, whether it is Edwards' initial retirement or her return to work—simply the law and jurisprudence states that if a state employee returns to work, then any retirement benefits *shall* be suspended. Thus, we find no practical, factual or legal difference or distinction in law or jurisprudence as to a state

4

employee's retirement or re-retirement pursuant to La.R.S. 11:291(G), and *Sims*, 358 So.2d at 919. Therefore, we find these arguments by Cook to be without merit.

*II.    Bad Faith*

Next, Cook maintains that while *Sims* and its progeny recognized that the choice of voluntary reemployment belongs to the employee-spouse, the employee-spouse must act in good faith when making that choice. Cook asserts that Edwards acted in bad faith by preventing him from receiving his share of her retirement benefits indefinitely by returning to work and opting to have her retirement payments suspended as a "bald face attempt to prevent an ex-spouse from drawing half of the retirement that was earned during the marriage."

We find that Cook is correct that the Louisiana Supreme Court indicates the employee-spouse has an obligation to act in good faith when making decisions about his or her pension plan because that spouse has control over the pension plan until it becomes payable. *See Sims,* 358 So.2d 923, fn. 4. However, we do not find any factual or legal basis in the record before us for a finding that Edwards acted in bad faith by returning to work.

Bad faith is intentionally and maliciously performing an action. Black's Law Dictionary defines "bad faith" as "[d]ishonesty of belief, purpose, or motive" and lists the following types of bad faith that have been recognized in judicial decisions: "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." BLACK'S LAW DICTIONARY (11th ed. 2019).

The Louisiana Supreme Court has also been defined bad faith as:

> the opposite of "good faith," generally implying or involving actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation,

not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. Term 'bad faith' is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; it is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will.

*Bordelon v. Medical Center of Baton Rouge*, 03-202 (La. 10/21/03), 871 So.2d 1075, 1083 n.7.

A finding of bad faith is a factual determination subject to the manifest error standard of review. *Aguillard v. Crowley Garment Mfg. Co*., 01-594 (La.App. 3 Cir. 2/27/02), 824 So.2d 347, *writs denied*, 02-1348, 02-1170 (La. 8/30/02), 823 So.2d 955, 956. However, here no hearing was held prior to entry of the judgment, and no evidence or oral arguments were presented by parties or counsel. Thus, any finding by the trial court that Edwards acted in bad faith was not based on a factual determination, unless it is based on undisputed facts, and, as such, is not entitled to deference.

Regardless, it is unclear from the limited record what facts and evidence, if any, the trial court considered as to Edwards allegedly being in bad faith. In reviewing the record, we find the trial court erred in choosing to deviate from the plain language of *Sims* and La.R.S. 11:291(G), which require that the benefits to be awarded to the non-employee spouse shall be suspended until Edward's retirement. In finding such, the trial court erroneously and improperly based its ruling on equity rather than requiring Cook to carry his burden by providing sufficient evidence to show bad faith by Edwards, with the trial court only noting that Cook is a 66-year-old man in necessitous circumstances because he has Social Security as his sole source of income.

6

The trial court also cited an Arizona Supreme Court case, *Koelsch v. Koelsch*, 148 Ariz. 176, 713, P.2d 1234 (1986), as the basis for its judgment. We find that the trial court's reliance on *Koelsch* is misplaced, and the trial court acted beyond its authority in rendering a ruling requiring the payment of retirement benefits that are not currently payable as contemplated by *Sims* and La.R.S. 11:291(G).

Further, the trial court's ruling punishes Edwards for exercising her right to return to work and fails to allow her to suspend her retirement benefits, as is her legal right, pursuant to option 3 under La.R.S. 11:416(A)(3)(a), which, in pertinent part, provides as follows:

> A. Regardless of age, if a retiree of the system is engaged or hereafter engages in employment which otherwise would render him eligible for membership in the system, he shall choose one of the following irrevocable options:
>
> . . . .
>
> (3)(a) Option 3. The retiree may request immediate suspension of his benefit and become a member of this system, effective on the first day of reemployment. Upon such regaining of membership, he shall contribute thereafter at the current contribution rate as applicable to his position. Upon subsequent retirement, his suspended retirement allowance shall be restored to full force and effect. In addition, if he has worked and contributed for at least thirty-six months, his retirement allowance shall be increased by an amount attributable to his service and average compensation since reemployment based on the computation formula in effect at the time of subsequent retirement. If he has been reemployed for a period less than thirty-six months, upon termination of reemployment the contributions paid by the retiree since his reemployment shall, upon application, be refunded to the retiree. In no event shall the member receive duplicate credit for unused sick and annual leave that had been included in the computation of his original retirement allowance. Any supplemental benefit shall be based on reemployment service credit only and shall not include any other specific amount which may otherwise be provided in the regular retirement benefit computation formula. In the event of the member's death prior to subsequent retirement, payment of benefits to the designated beneficiary or survivor shall be in accordance

with the option selected by the member at the time of his original retirement. No change in the option originally selected by the member shall be permitted except as provided in R.S. 11:446(C). In no event shall the supplemental benefit exceed an amount which, when combined with the original benefit, equals one hundred percent of the average compensation figure used to compute the supplemental benefit. Under no circumstances shall any person who has regained membership pursuant to the provisions of this Paragraph be allowed to purchase service credit for any period employed in the state service during which he continued to draw his retirement allowance.

In summary, we find that Edwards' benefits are suspended until her retirement/re-retirement, and no payment is due Cook until that time, as contemplated by *Sims* and La.R.S. 11:291(G). We further find that Cook failed to present any evidence that Edwards acted in bad faith by returning to work. Accordingly, we reverse the judgment of the trial court finding either LASERS or Edwards is indebted to Cook for continuous benefits for his share that Edwards would have received had she not voluntarily returned to work.

## III.    DROP Payments

Additionally, Edwards contends that the trial court erred to the extent that it also awarded Cook a portion of her lump-sum DROP benefits, which she contends was received and spent by the parties during their marriage and prior to the termination of the community of acquets and gains. We find merit to this contention.

Here, in 2019, while Cook and Edwards were *still married*, Edwards entered the State's Deferred Retirement Option Plan (DROP), and she withdrew a lump sum of money from her DROP fund before retiring. The judgment of divorce was entered and the former community was terminated retroactive to July 5, 2022. Thus, both Cook and Edwards received and enjoyed the benefits of the lump sum from Edwards' DROP funds, along with her monthly retirement checks, for two to three years prior to the termination of the community of acquets and gains.

8

## **DECREE**

Therefore, Plaintiff-Applicant, Pamela Pratt-Cook, now Edwards' writ is granted, and we reverse the judgment of the trial court finding LASERS and/or Edwards is indebted to Cook for continuous benefits, along with the previous DROP funds received, for his proportionate share, because Edwards had returned to work. Costs of these proceedings are assessed to Defendant-Respondent, Charles Ray Cook, Sr.

**WRIT GRANTED. RELIEF GRANTED; JUDGMENT REVERSED AND RENDERED.**